## MOORE v. CITY OF YONKERS.

(Circuit Court of Appeals, Second Circuit. April 18, 1916.)

No. 212.

1. MUNICIPAL CORPORATIONS ⬌488, 489(5)—PUBLIC IMPROVEMENTS—ASSESS-MENT FOR BENEFITS—WAIVER OF OBJECTIONS.

The general rule is that objections to an assessment for a local improvement are deemed waived, if not presented at the time and in the manner prescribed by law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1151, 1152; Dec. Dig. ⬌488, 489(5).]

2. MUNICIPAL CORPORATIONS ⬌488, 489(5)—ASSESSMENT FOR PUBLIC IM-PROVEMENTS—SUIT TO ENJOIN.

An owner, whose property was assessed for benefits for a street improvement, who failed to appear at the public hearing before the municipal council to fix the boundaries of the assessment district, or before the board of assessors at the time fixed for hearing objections to the assessment, or at the public hearing before the council when the assessment was confirmed, in the absence of fraud or bad faith, is concluded by the action taken, and cannot maintain a suit in the federal courts to enjoin enforcement of the assessment on the ground that property benefited was not included in the assessment district, or that the assessment is confiscatory and deprives him of his property for a public use without compensation, in violation of his constitutional rights.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1151, 1152; Dec. Dig. ⬌488, 489(5).]

3. MUNICIPAL CORPORATIONS ⬌516—PUBLIC IMPROVEMENTS—ASSESSMENT FOR BENEFITS.

A Legislature, or a common council, exercising an authority delegated to it by the Legislature, is not by the Constitution of the United States required to include within the assessing area all the property benefited by a local improvement, but may in its discretion assess the whole cost on abutting property, and in the absence of fraud or bad faith its action is reviewable by the courts only in the manner provided by statute.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. ⬌516.]

4. MUNICIPAL CORPORATIONS ⬌488, 489(5)—ASSESSMENT FOR PUBLIC IM-PROVEMENTS—ESTOPPEL.

A property owner, who thinks himself injured by a wrongful special assessment, is, if he has knowledge of what is being done, under obliga-

---

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion to act promptly in interposing his objections; otherwise, his laches will bar him of relief.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1151, 1152; Dec. Dig. ☞488, 489(5).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Edward C. Moore, Jr., against the City of Yonkers. Decree for defendant, and complainant appeals. Affirmed.

Dunlop & Smith, of New York City (James N. Dunlop and Heber Smith, both of New York City, of counsel), for appellant.

Thomas F. Curran, of Yonkers, N. Y., for appellee.

Before COXE and ROGERS, Circuit Judges, and HOUGH, District Judge.

ROGERS, Circuit Judge. This case arises out of special assessments levied by the defendant against certain premises in the city of Yonkers in the state of New York. The action is in form a suit in equity to remove a cloud upon the title to appellant's premises. The alleged cloud consists of two assessments levied in certain proceedings for the laying out, opening and extending of Convent Place from Convent avenue to Palisade avenue in the city aforesaid. It is alleged in the complaint and contended on the trial that, while the proceedings resulting in the assessment were entirely regular on their face, nevertheless, the assessment was void as a taking of private property for public use without compensation in contravention of the fourteenth amendment to the Constitution of the United States. The complaint prays for a decree vacating the assessments and enjoining their collection. The court below dismissed the bill for want of equity, but filed no opinion.

In this case the plaintiff was the owner in fee of a parcel of land in the city of Yonkers, lying between Palisade avenue on the west and Park avenue on the east, and fronting on Shonnard Place on the north. The land had a frontage of some 800 feet on Palisade avenue and Park avenue, and of some 440 feet on Shonnard Place. The common council of Yonkers on August 1, 1910, adopted a resolution initiating proceedings to open Convent Place between Convent avenue and Palisade avenue. Convent avenue ran parallel with Palisade avenue and Park avenue and was the second avenue east of Park avenue. To do this it was necessary to take a part of the tract of plaintiff's land, and for the portion of his land appropriated for this purpose plaintiff was awarded the sum of $10,203.

The city council adopted an ordinance directing the proper officers to assess the whole cost of the opening of this avenue upon the property included within the boundaries of the district of assessment as fixed by the council; and a portion of the premises designated by the council as deemed to be benefited by the opening of Convent Place included the plaintiff's property as above described. The board of assessors of the city accordingly prepared an assessment roll assessing the entire cost of the proceedings upon the property within the designated district.

This assessment was presented to the council and on November 10, 1913, was confirmed by it, and the various assessments thereupon became liens upon the parcels of land affected thereby. The amount assessed against the property of the plaintiff amounted to $14,175.38, being $6,952.85 on lot 9 and $7,222.53 on lot 10. The aggregate amount of all the assessments on the property within the taxing district was $22,410.17. More than one-half of the whole amount thus fell upon the property of the plaintiff.

The plaintiff claims that the assessments on his premises are in excess of the benefit conferred upon the whole of his premises; that in fixing the limits of the assessing district property has been included which was not benefited, and property excluded which was benefited; that the proceeding is illegal and erroneous, in that it was not made in accordance with the benefit received; that to the extent the assessments exceeded the benefit conferred his property has been taken from him for public use without just compensation and in contravention of the Constitution of the United States.

The plaintiff alleges that on December 27, 1913, "being ignorant of the fact that said assessment was invalid," he was compelled to pay and did pay to the defendant under coercion of law $5,250 on account of the assessment on lot 9, and that the balance of the assessment on that lot, $1,702.85, remains unpaid, and is a lien on the lot, and constitutes a cloud upon the title; and he also alleges that he paid $5,250 on account of the assessment on lot 10, and that the balance of that assessment, $1,972.53, is unpaid, and a lien on the premises, and constitutes a cloud on the title. He also alleges that on August 22, 1914, and as soon as he became aware of the illegality of the assessment, he presented to the common council a petition in which he prayed that the council would reverse and correct the assessment roll to make it accord with the benefit conferred on each parcel. His petition for relief was denied.

Thereupon he filed his bill in the court below, asking that the defendant be directed to repay to him so much of the sums received from him as may be found to be in excess of the benefits conferred upon his premises; the assessments to be vacated and set aside in so far as they exceed the benefits received. He also asks an injunction restraining and enjoining the defendant from taking any steps to enforce its lien upon his land, or to collect the amount of the assessment still unpaid.

The Legislature has power to create an assessment district and fix its boundaries, and charge the cost of a local improvement in whole or in part on the property within the defined area, either according to valuation or frontage or superficial area. Instead of exercising the power directly, it may delegate the right to a municipal corporation, and when the power is so delegated the municipal corporation exercises its discretion in determining what property should be included in the assessment district and the extent to which the property therein is benefited.

The question of what territory is to be included in the area to be assessed is legislative, and not judicial. And the action of the Legislature, or of the common council, to which body the legislative discretion

may have been delegated, is ordinarily conclusive. Williams v. Eggleston, 170 U. S. 304, 311, 18 Sup. Ct. 617, 42 L. Ed. 1047. But the power of a common council or of a Legislature is not in these matters altogether unlimited. Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. In Norwood v. Baker the Supreme Court laid down the law respecting assessments as follows:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

In that case land was taken for street purposes without compensation, and, in addition, the property owner was assessed $218.58 to pay the costs of condemnation proceedings. The court below held that the complainant was deprived of his property without due process of law, and issued a permanent injunction enjoining the village from enforcing the assessment.

In the case at bar the assessment against the complainant's lots aggregated $14,175.38, and exceeded the award made to him by the sum of $3,972.38. In other words, not only was the complainant not compensated by the city for surrendering a strip of land containing more than half an acre, but, on the contrary, was required to pay $3,972.38 for the privilege of giving up his land; and of this sum of $3,972.38 the sum of $1,966.21 was paid in awards to other property owners, who appear to have received a benefit from the street, but who were not required to pay any portion of the expense of the proceeding, as their property was not included in the assessment district. Moreover, the annual assessment of complainant's property the year after the improvement was made and the special assessment was laid was no greater than it was before the improvement was made. The Tax Law of the state requires the assessors each year to assess all the taxable property in their district at its value. The same assessors, therefore, who levied a special assessment of $14,175.38 against complainant's property for benefits created by the improvement, swore nine months later that the value of the property had not increased over its value of a year before. The case is a much more aggravated one than that of Norwood v. Baker, supra. The complainant's expert testified that in his opinion complainant's property was benefited by the opening of the street by an amount some $9,000 less than the assessments levied on the property. The experts of the defendant testified, however, to the contrary, and according to their testimony the plaintiff derived a net benefit of $2,388.48.

As to the assessment district the District Judge was satisfied that there was injustice in fixing its limits, and that property which ought plainly to have been included was left out of it. He said:

"There is no question at all about it, if you take the physical situation that has been described here, the great advantage of opening this street was not

to the property through which it was cut, but to those people up there who wanted to get down to the trolley line," etc.

What was done in Norwood v. Baker and in the case at bar was not a legitimate exercise of the taxing power, but was an act of confiscation of this complainant's property.

The question, however, is whether the courts of the United States can afford the plaintiff the relief which he seeks, in view of the situation in which he stood at the time he instituted his action in the court below. In this case the plaintiff failed to appear and to make objection at the public hearing given by the common council on the question as to the area of the assessment district. He also failed to appear before the board of assessors at the time fixed pursuant to law for hearing objections to the assessment; and in like manner he failed to appear before the common council at the public hearing on the confirmation of the assessment. At each of these hearings an opportunity was afforded him to be heard on all pertinent and available questions. As he did not appear at any of the hearings, and made no objection until after the common council had confirmed both the assessing district and the assessment roll, it is necessary to inquire whether he is now entitled to come into court to question the validity of the assessment.

[1] The general rule is that objections to an assessment are deemed to be waived, if not presented at the time and in the manner prescribed by law. Betts v. Naperville, 214 Ill. 380, 73 N. E. 752; Ottawa v. Chicago, etc., R. Co., 25 Ill. 43; Stewart v. Detroit, 137 Mich. 381, 100 N. W. 613; Pabst Brewing Co. v. Milwaukee, 126 Wis. 110, 105 N. W. 563; Leavenworth v. Jones, 69 Kan. 857, 77 Pac. 273; Morse v. Omaha, 67 Neb. 426, 93 N. W. 734; Wilkinson v. Trenton, 35 N. J. Law, 485, affirmed 36 N. J. Law, 499; State v. Norton, 63 Minn. 497, 65 N. W. 935.

[2] In Brown v. Grand Rapids, 83 Mich. 103, 47 N. W. 117 (1890) a bill was filed to remove a cloud on complainant's title under circumstances somewhat similar to the case at bar. The city of Grand Rapids had made an assessment for the opening and widening of a street and had levied an assessment therefor on complainant's property. The complainant insisted in that case, as in the case now before us, that the taxing district did not include all the property benefited; that the assessors had acted illegally and arbitrarily in fixing the assessment; that the effect was to compel him to donate his property to public use without compensation. The court reversed the court below and dismissed the bill. The court in its opinion said:

"He did not appear, and does not pretend that he made any effort to have the assessment corrected, before the council. The determination of these two bodies, the commissioners who made the assessment roll, and the common council of the city of Grand Rapids, cannot now be inquired into, unless it appears that they acted in bad faith. * * * Where provision is made by law for a review of assessment proceedings, and a body appointed with the power to set the assessment aside or correct the error complained of, and the party wholly fails to appear before such body, or take any steps to have such correction made, he is not in position to appeal to the courts for redress in the absence of fraud or bad faith."

See Brown v. City of Saginaw, 107 Mich. 643, 65 N. W. 601.

In City of Terre Haute v. Mack, 139 Ind. 99, 110, 38 N. E. 468, 472, the court declared that:

"The act of the engineer in making his report and ascertaining and fixing the amount of liability on the lots or parcels, and that of the common council in making the assessment, were each ministerial and not judicial acts. From such acts no appeal lies unless given by statute. Board, etc., v. Davis, 136 Ind. 503 [36 N. E. 141, 22 L. R. A. 515]."

In Wright v. Forrestal, 65 Wis. 341, 27 N. W. 52, the action was brought to declare void and set aside certain tax certificates issued upon a tax sale for the nonpayment of special assessments for a local street improvement. The complaint was dismissed, and the court said:

"Certainly the record does show that quite a large number of the lots were not charged with benefits to an amount equal to the estimated cost of the work in front of the same, nor anything near that sum. Any mistakes which the board may have made in charging lots with a greater sum as benefits than it might be made to appear they would receive from the construction of the street would furnish no ground of relief so long as such charge was not made fraudulently and for the purpose of making the owners pay more than their just proportion of the costs of such improvement. Mistakes of judgment or opinion in this respect can only be corrected by appearing before the board at the proper time, and having them corrected by an appeal to the board or to the common council, as provided by the charter. After the time for reviewing the assessment has passed, the legality or justice of the award of benefits can only be impeached by showing that the award was not made upon the proper basis, or that it was fraudulently made. Mere mistake of judgment cannot avail to vitiate the proceedings."

See, also, Lambert v. Bates, 148 Cal. 146, 82 Pac. 767; Twenty-Eighth Street Sewer, 158 Pa. 464, 467, 27 Atl. 1109.

The proceedings taken by the municipal authorities of Yonkers were not void. The city had authority to open this street, and to assess the cost of the improvement upon the property benefited. Two errors are alleged to have been committed. The first relates to the limits of the assessing district, which it is claimed failed to include property which should have been embraced within it. The second relates to the character of the assessment, which it is claimed substantially exceeded the benefits which accrued to the complainant's property.

[3] As to the first of these questions the complainant is not at liberty to raise it. A Legislature, or a common council exercising an authority delegated to it by the Legislature, is not by the Constitution of the United States required to include within the assessing area all the property benefited by a local improvement. It could assess the whole cost upon the abutting property alone, if it thought best. In Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369, the court, speaking through Mr. Justice Peckham, said:

"Assuming for the purpose of this objection that the owner of these lands had by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of opinion that the decisions of such a tribunal, in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question. It cannot be that upon a question of fact of such a nature this court has the power to review the decision

of the state tribunal which has been pronounced under a statute providing for a hearing upon notice. The erroneous decision of such a question of fact violates no constitutional provision. * * * It has been held in this court that the Legislature has power to fix such a district for itself without any hearing as to benefits, for the purpose of assessing upon the lands within the district the cost of a local, public improvement. The Legislature, when it fixes the district itself, is supposed to have made proper inquiry and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question. The right which he thereafter has is to a hearing upon the question, of what is termed the apportionment of the tax; i. e., the amount of the tax which he is to pay. Paulsen v. Portland, 149 U. S. 30, 41 [13 Sup. Ct. 750, 37 L. Ed. 637]."

It is nowhere alleged in the complaint that in fixing the assessment district the common council was actuated by fraud or bad faith. It is simply averred that certain premises actually and substantially benefited by the opening of the street were excluded, and that certain premises which were not benefited were included. This raises no constitutional question which will enable a United States court to review the decision of the state tribunal—in this case the common council—which has been rendered under an act which provided for a hearing upon notice. Complainant did not avail himself of his opportunity to attend and cannot now raise the question here.

The second error is one of a different nature. It is that the assessment upon the complainant's property is in excess of the benefit conferred upon the premises. That raises a constitutional question, and if the allegation is true then the assessment is contrary to the Constitution. That the assessment is in excess of the benefits we have already pointed out. But is the plaintiff entitled to raise the question under the circumstances of this case? Where an assessment is confirmed by proceedings in a court, and a judgment is entered to that effect, such judgment is controlled as to its effect and validity by the principles of law applicable to judgments in general. Confirmation is not always by a court, but is sometimes by a common council or other corresponding body, the action of which body is by statute to have the same effect as the judgment of a court. And in such cases the action taken cannot be attacked collaterally if the tribunal had jurisdiction, but is conclusive upon the parties. Page and Jones on Taxation by Assessment, volume 2, § 927. That the common council of Yonkers had jurisdiction in the matter of this assessment is clearly disclosed.

In this case it is not contended that the statute under which the assessment was laid is unconstitutional. It provided fully for notice and hearing, and it is immaterial that such hearing was to be had before the tribunal laid the assessment. Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Hibben v. Smith, 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195; Seattle v. Kelleher, 195 U. S. 351, 25 Sup. Ct. 44, 49 L. Ed. 232. Appellant, as already stated, never appeared before that tribunal, and he has never sought through the courts any correction of this assessment, other than that proposed by this suit. If he had been so disposed he might by certiorari or by original action have pro-

cured review in the courts of the state of New York, and there raised the constitutional objections here insisted on. Matter of New York, 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. (N. S.) 335, 13 Ann. Cas. 598. In our opinion, a property owner, who deems himself injured by an assessment, and who has an opportunity of seeking correction before the tribunal pointed out in the assessment law, is under an obligation to appear there and urge his objections in order that the municipality may correct its proposed error. That waiver of the most lawful objections to a proposed assessment is possible has been pointed out in Wight v. Davidson, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; Chadwick v. Kelly, 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293.

The conclusion we have reached is that the complainant, not having appeared before the tribunal the New York law provided for the confirmation of these assessments at the hearings before that body, and not having taken steps to have the action taken by that tribunal reviewed in a direct proceeding by the courts, and not having shown any reason why that course was not open to him and why it was not taken, is now precluded from attacking in this collateral proceeding the validity of the assessment.

[4] Moreover, a property owner who thinks himself injured by a wrongful assessment is, if he has knowledge of what is being done, under obligation to act promptly in interposing his objections, so that the municipality may correct the defects in its proposed action. Many courts have held that, if a public corporation has jurisdiction to levy an assessment, a property owner who makes no objection, but waits until the improvement has been made and his property has received the benefit therefrom, will not be permitted to raise objections which, if raised in time, would have rendered the assessment invalid. His conduct estops him, or amounts to a waiver of his rights, or shows such laches as debars him from relief. The public interests demand prompt objection to be made. In the case at bar the assessment was confirmed by the council on October 14, 1913, and complainant commenced his suit in the court below more than a year thereafter, on November 20, 1914. He alleges that he was ignorant of the invalidity of the assessment; but ignorance of the law does not excuse him, for he is assumed to know what the law is. The complaint was rightly dismissed.

Judgment affirmed.